TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Tel: (718) 762-1324
troylaw@troypllc.com
*Attorneys for the Plaintiff and proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

JULIANA AU,
*on behalf of herself and others similarly situated,*

                                 Plaintiff,

                    v.

MARSHALLS OF MA, INC.,
THE TJX COMPANIES, INC.,
STEPHEN CHEUNG, and
PATRICK DIAZ,

                            Defendants.

-----------------------------------------------------------------x

Case No. 24-cv-02662

**FED. R. CIV. P. 23 CLASS ACTION**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

        Plaintiff JULIANA AU (hereinafter referred to as "Plaintiff" or "AU") on behalf of herself and others similarly situated, by and through her attorneys Troy Law, PLLC, hereby brings this complaint against Defendants MARSHALLS OF MA, INC. (hereinafter referred to as "MARSHALLS") and THE TJX COMPANIES, INC. (hereinafter referred to as "TJX") (hereinafter referred to collectively as "Corporate Defendants") and STEPHEN CHEUNG (hereinafter referred to as "CHEUNG") and PATRICK DIAZ (hereinafter referred to as "DIAZ") (hereinafter referred to collectively as "Individual Defendants") (Individual Defendants hereinafter collectively with Corporate Defendants referred to as "Defendants") and alleges as follows:

## INTRODUCTION

        1.    Plaintiff brings this action against Corporate Defendants for discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

2000e-2(a)(1); against Defendants for discrimination on the basis of sex in violation of New York State Human Rights Law ("NYSRHL"), N.Y. Exec. L. § 296(1)(a) and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. C. § 8-107(1); against Corporate Defendants for retaliation for opposing discrimination in violation of Title VII, 42 U.S.C. § 2000e-3(a); and against Corporate Defendants and DIAZ for retaliation for opposing discrimination in violation of NYSHRL, NY Exec. L. § 296(1)(e), and NYCHRL, N.Y.C. Admin. C. § 8-107(7).

2.      Plaintiff alleges that she is entitled to recover: (1) reinstatement to her pre-discrimination position and schedule pursuant to 42 U.S.C. § 2000e-5(g), N.Y. Exec. L. § 297(9), and N.Y.C. Admin. C. § 8-502(a); (2) back pay pursuant to 42 U.S.C. § 2000e-5(g), N.Y. Exec. L. § 297(9), and N.Y.C. Admin. C. § 8-502(a); (3) compensatory damages for nonpecuniary losses including emotional pain pursuant to 42 U.S.C. § 2000e-5(g), N.Y. Exec. L. § 297(9), and N.Y.C. Admin. C. § 8-502(a); (4) punitive damages pursuant to 42 U.S.C. § 2000e-5(g), N.Y. Exec. L. § 297(9), and N.Y.C. Admin. C. § 8-502(a); (5) prejudgment and post-judgment interest; and (6) reasonable attorney fees pursuant to 42 U.S.C. § 2000e-5(k), N.Y. Exec. L. § 297(10), and N.Y.C. Admin. C. § 8-502(g).

## JURISDICTION AND VENUE

3.      This Court has original federal question jurisdiction over this controversy pursuant to 42 U.S.C. § 2000e-5(f)(3), and has supplemental jurisdiction over Plaintiff's state law and local law claims pursuant to 28 U.S.C. § 1367(a).

4.      This Court has personal jurisdiction over the Defendants because they are citizens and residents of the State of New York who are domiciled in and conduct business in the State of New York.

5.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants conduct business in the Eastern

District of New York, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of New York.

## PLAINTIFF

6.    AU was employed by Corporate Defendants from about September 2020 through the present to work in various positions at Corporate Defendants' Marshalls department store #1082, located on the fourth floor of The Shops at Skyview mall, at 40-24 College Point Boulevard, Flushing, NY 11354.

7.    AU is an Asian, Chinese, non-Hispanic woman.

8.    Plaintiff has fulfilled all conditions precedent to this matter, or such conditions have been waived.

## DEFENDANTS

*Corporate Defendants*

9.    TJX is a foreign business corporation organized in the State of Delaware, with a principal executive office at 770 Cochituate Road, Framingham, MA 01701 and a registered address at 28 Liberty Street, New York, NY 10005, which operates Marshalls department stores in the State of New York including Marshalls department store #1082, and which employs individuals in the State of New York including Plaintiff.

10.    TJX is an employer engaged in an industry affecting commerce, to wit, the operation of department stores throughout the United States.

11.    TJX had fifteen (15) or more employees for each working day in each of at least twenty (20) calendar weeks in 2023 and 2024.

12.    MARSHALLS is a foreign business corporation organized in the Commonwealth of Massachusetts, with a principal executive office at 770 Cochituate Road, Framingham, MA 01701 and a registered address at 28 Liberty Street, New York, NY 10005, which operates

Marshalls department stores in the State of New York including Marshalls department store #1082, and which employs individuals in the State of New York including Plaintiff.

13.    MARSHALLS is an employer engaged in an industry affecting commerce, to wit, the operation of department stores throughout the United States.

14.    MARSHALLS had fifteen (15) or more employees for each working day in each of at least twenty (20) calendar weeks in 2023 and 2024.

15.    MARSHALLS and TJX variously exercised control over Plaintiff's work and compensation.

16.    Plaintiff received her paychecks from MARSHALLS as the payor.

17.    MARSHALLS withheld state and federal taxes from Plaintiff's pay and issued Plaintiff an IRS Form W-2 at the end of each of her years of employment from 2020 through 2023.

18.    TJX supervised Plaintiff and periodically conducted employee performance reviews of Plaintiff through employee appraisers which it employed.

19.    TJX listed Plaintiff as its employee on its periodic performance review reports.

20.    Corporate Defendants constitute a single employer which employed Plaintiff and are jointly and severally liable for the acts and omissions alleged herein.

### *Individual Defendants*

21.    Throughout the period relevant to this lawsuit, CHEUNG was a cashier at Marshalls department store #1082.

22.    CHEUNG is an Asian, Chinese, non-Hispanic man.

23.    Throughout the period relevant to this lawsuit, DIAZ was the manager of Marshalls department store #1082.

24.    DIAZ is a Hispanic man.

25.    Throughout the period relevant to this lawsuit, DIAZ supervised all employees of

Marshalls department store #1082, including Plaintiff and CHEUNG.

26.    Throughout the period relevant to this lawsuit, DIAZ determined employees' schedules and conditions of employment, including by transferring Plaintiff from her initial position as a cashier to the stockroom, by transferring Plaintiff from her position in the stockroom to the markdowns department, and by transferring Plaintiff from her position in the markdowns department back to the cashier station; and by adjusting her work schedules.

## STATEMENT OF FACTS

27.    AU was employed by Corporate Defendants from about September 2020 through the present to work in various positions at Corporate Defendants' Marshalls department store #1082, located on the fourth floor of The Shops at Skyview mall, at 40-24 College Point Boulevard, Flushing, NY 11354.

28.    From on or about September 2020 through on or about August 6, 2022, AU was employed as a cashier with the job title "Merchandise Associate."

29.    AU's job duties as a Merchandise Associate included greeting customers, processing transactions, selling TJX Rewards cards, bagging merchandise, reshelving returned or unwanted merchandise, and when the cashier station was not busy organizing merchandise on the sales floor.

30.    On average, as a Merchandise Associate, AU worked twenty-one hours and forty minutes (21.67 hours), over the course of on average four (4) days, per week.

31.    From about September 2020 through about May 2021, AU was paid a regular hourly rate of $15.00 per hour.

32.    From about June 2021 through about May 2022, AU was paid a regular hourly rate of $15.40 per hour.

33.    AU received her raise from $15.00 to $15.40 per hour following, and due to, a

positive performance review conducted in or about April 2021.

34.     From about June 2022 through on or about August 6, 2022, AU was paid a regular hourly rate of $16.01 per hour.

35.     AU received her raise from $15.40 to $16.01 per hour following, and due to, a positive performance review conducted on or about April 8, 2022 by Appraiser Kadesia Graham (hereinafter "GRAHAM"), in which AU received an overall "meets expectations" grade, having earned 33 out of a possible 55 points.

36.     AU received no less than a "meets expectations" grade, and earned no fewer than 3 out of 5 available points, on each of eleven evaluation categories, to wit: (1) "TJX Store Associate Communication;" (2) "TJX Store Associate Customer Service;" (3) TJX Store Associate Dependability;" (4) "TJX Store Associate Dress Code;" (5) "TJX Store Associate Flexibility;" (6) "TJX Store Associate Initiative;" (7) "TJX Store Associate Interpersonal;" (8) "TJX Store Associate Policies and Procedures;" (9) "TJX Store Associate Quality of Work [1];" (10) "TJX Store Associate Quality of Work [2];" and (11) "TJX Store Associate Team Player."

37.     GRAHAM wrote of AU in her performance review on or about April 8, 2022 that she "work[ed] well with her fellow associates," was "an effective member of the front end team," "communicat[ed] very effectively with her fellow associates and managers," and was a "[g]reat team player."

38.     On or about August 7, 2022, DIAZ transferred AU to work in the back room as a stocker with the job title "Backroom Associate."

39.     AU's job duties as a Backroom Associate included opening boxes of merchandise, transferring merchandise from shipping boxes to trolleys for delivery to the sales floor, and stocking toys on sales floor shelves.

40.    AU worked thirty-four hours and fifteen minutes (34.25 hours) over the course of five (5) working days the week beginning August 7, 2022.

41.    AU worked twenty hours (20 hours) over the course of four (4) working days the week beginning August 14, 2022.

42.    From on or about August 7, 2022 through on or about August 20, 2022, AU was paid a regular hourly rate of $16.01 per hour.

43.    On or about August 21, 2022, DIAZ transferred AU to work in the markdowns department with the job title "Markdowns Associate."

44.    AU's job duties as a Markdowns Associate included clambering up and down ladders with a cumbersome electronic scanner in hand to scan each and every item that required its price to be marked down.

45.    On average, as a Markdown Associate, AU worked twenty-four hours and thirty minutes (24.50 hours), over the course of on average four (4) days, per week.

46.    From on or about August 21, 2022 through on or about November 5, 2022, AU was paid a regular hourly rate of $16.01 per hour.

47.    On or about November 6, 2022, DIAZ transferred AU to work as a cashier in the returns department with the job title "Returns Associate."

48.    On average, as a Returns Associate, AU worked eighteen hours and twenty-five minutes (18.42 hours), over the course of on average three (3) days, per week.

49.    From on or about November 6, 2022, and thereafter, AU was paid a regular hourly rate of $16.01 per hour.

### Sexual Harassment

50.    During her employment, AU, other female employees of Corporate Defendants, and female customers of Corporate Defendants, were and continue to be subject to severe and

pervasive sexual harassment by CHEUNG which created and continues to create a work environment sexually hostile to women.

51.     In about early February 2022, while AU was hanging hangars in the storage rack nearby the cash register, in the presence of cashiers Sandy P. Nhan (hereinafter referred to as "NHAN") and Anthony R. Ortega Lopez (hereinafter referred to as "ORTEGA"), CHEUNG reached his hand to touch AU's belly.

52.     AU swatted CHEUNG's hand away from her before he could do anything else, communicating in no uncertain terms that his touching was unwelcome.

53.     AU reported this incident to DIAZ in writing, as well as to Brandy Wright (hereinafter referred to as "WRIGHT") from TJX's Human Resources department, in about August 2022, but no disciplinary action was taken against CHEUNG.

54.     Also in about August 2022, AU observed CHEUNG asking NHAN if NHAN wanted to sleep with him, and NHAN reacting in visible disgust.

55.     CHEUNG constantly leered at female customers, told female customers they had beautiful or fit figures, told the children of female customers to tell their mothers on his behalf that he thought they were beautiful, and solicited Instagram account information from female customers for the purpose of later asking them for sex.

56.     AU complained multiple times about CHEUNG's sexually-charged behavior toward customers to numerous TJX managers, including GRAHAM, the assistant manager Melissa Muthu (hereinafter "MUTHU"), the cashier coordinator "Natasha" (hereinafter "NATASHA"), and the coordinator "Sam" (hereinafter "SAM").

57.     Each time, no action was taken.

58.     NATASHA has personally witnessed CHEUNG's sexually-charged behavior

toward customers, but has taken no action.

59.     GRAHAM, NATASHA, SAM, and MELISSA have each expressed to AU the view that Corporate Defendants cannot take any action to address CHEUNG's behavior toward customers because he did not physically touch them, no matter how it made his coworkers feel.

60.     Corporate Defendants, and DIAZ, tolerated CHEUNG's sexually-charged behavior toward customers because in their view it drove sales, including of TJX Rewards cards.

61.     Since AU rejected his advances, CHEUNG has subjected AU to unwanted bullying and intrusions into her private life, including her relationship with her boyfriend.

62.     On or about July 28, 2022, at about 21:00 hours when the store was about to close, AU was putting items away using a shopping cart.

63.     When AU took two items out of the shopping cart, and carried them over to the shelves where they belonged to put them away, CHEUNG approached her and asked, sneeringly, why AU had left the shopping cart alone.

64.     AU told CHEUNG she didn't leave the cart alone, that she knew she had to put it away, and that she would get right back to it once she finished putting away the items she needed to put away.

65.     At this point, a manager told AU, CHENG, and the other employees to finish the tasks they were doing, and to clock out.

66.     Rather than continuing to work, or going to clock out, per management instructions, CHEUNG followed AU back to the shopping cart and spent the rest of the shift following her around as she worked, and talking at her in a baby-talk impression of her voice.

67.     At another time, when AU was leaving the store with her boyfriend (who uses a mobility scooter as a mobility aid) after her shift had ended, CHEUNG approached them and

derisively called AU's walking speed slow compared to her boyfriend's speed on his scooter.

68.    Beginning in about November 2022 and continuing through the present, AU had to have other workers accompany her throughout the store, including to the break room when she clocks out, in order to avoid being alone with CHEUNG.

69.    CHEUNG's harassment of her personally (sexual and otherwise), his sexual harassment of NHAN, and his sexual harassment of female customers made AU dread coming to work because she would have to work alongside him; and when she was at work, made her uncomfortable, depressed, and anxious.

70.    AU has sought and received treatment for anxiety and depression, including weekly talk therapy and a prescription for the selective serotonin reuptake inhibitor (SSRI) Escitalopram, due to CHEUNG's harassment.

### Retaliation

71.    On or about August 7, 2022, following and because of AU's report of CHEUNG's harassment to DIAZ and WRIGHT, DIAZ reassigned AU from her position as a cashier "Merchandise Associate" to a position in the back room as a stocker with the job title "Backroom Associate."

72.    AU's job duties as a Backroom Associate included opening boxes of merchandise, transferring merchandise from shipping boxes to trolleys for delivery to the sales floor, and stocking toys on sales floor shelves.

73.    AU worked thirty-four hours and fifteen minutes (34.25 hours) over the course of five (5) working days the week beginning August 7, 2022.

74.    AU worked twenty hours (20 hours) over the course of four (4) working days the week beginning August 14, 2022. This was fewer hours per week than she had been working as a Merchandise Associate prior to August 7, 2022. On average, AU worked twenty-one hours and

forty minutes (21.67 hours) per week as a cashier. The week of July 31, 2022, immediately prior to the week of August 7, 2022, AU had worked approximately twenty-five hours and fifteen minutes (25.25 hours).

75.     From on or about August 7, 2022 through on or about August 20, 2022, AU was paid a regular hourly rate of $16.01 per hour, the same hourly rate she had been paid as a Merchandise Associate.

76.     Further, AU's new job duties caused her to develop painful tendonitis in her thumb.

77.     Meanwhile, CHEUNG was permitted to continue working at the cashier station, at his previous schedule (about thirty hours and fifteen minutes (30.25 hours) over the course of five (5) days per week) and at his previous salary.

78.     Nor was CHEUNG restrained from following AU into her work area or from harassing her during break times or while clocking in and out.

79.     Nor did CHEUNG suffer any other adverse employment action.

80.     Accordingly, AU's reassignment from Merchandise Associate to Backroom Associate did not constitute a reasonable accommodation to her complaints about CHEUNG, but constituted an adverse employment action in response to her opposition to CHEUNG's harassment.

81.     On or about August 21, 2022, as a consequence of AU having developed tendonitis as a Backroom Associate, DIAZ transferred AU to work in the markdowns department with the job title "Markdowns Associate."

82.     The markdowns department was widely regarded among Corporate Defendants' employees, including Plaintiff, as the least favored place to work, as it demanded both a cumbersome schedule and strenuous physical labor.

83.     AU's job duties as a Markdowns Associate included clambering up and down

ladders with a cumbersome electronic scanner in hand to scan each and every item that required its price to be marked down.

84.     On average, as a Markdown Associate, AU worked twenty-four hours and thirty minutes (24.50 hours), over the course of on average four (4) days, per week, approximately one hour and fifty minutes (1.17 hours) more than she had worked as a Merchandise Associate.

85.     However, AU's shifts as a Markdown Associate began significantly earlier in the day than her shifts as a Merchandise Associate had begun.

86.     As a Merchandise Associate, AU's shifts typically began at about 10:00 hours. As a Markdown Associate, AU's shifts typically began at about 06:15 hours.

87.     From on or about August 21, 2022 through on or about November 5, 2022, AU was paid a regular hourly rate of $16.01 per hour.

88.     Meanwhile, CHEUNG was permitted to continue working at the cashier station, at his previous schedule (about thirty hours and fifteen minutes (30.25 hours) over the course of five (5) days per week) and at his previous salary.

89.     Nor was CHEUNG restrained from following AU into her work area or from harassing her during break times or while clocking in and out.

90.     Nor did CHEUNG suffer any other adverse employment action.

91.     Accordingly, AU's reassignment from Backroom Associate to Markdown Associate did not constitute a reasonable accommodation to her complaints about CHEUNG, but constituted an adverse employment action in response to her opposition to CHEUNG's harassment.

92.     On or about November 6, 2022, DIAZ transferred AU to work as a cashier in the returns department with the job title "Returns Associate."

93.     On average, as a Returns Associate, AU worked eighteen hours and twenty-five

minutes (18.42 hours), over the course of on average three (3) days, per week.

94.    Frequently, for instance the weeks beginning November 6, 2022, January 22, 2023, and January 29, 2023, AU was scheduled to only work one (1) approximately six-hour (6-hour) shift per week.

95.    From on or about November 6, 2022, and thereafter, AU was paid a regular hourly rate of $16.01 per hour. Coupled with her drastic reduction in hours from where they had been in August 2022, AU found her weekly take-home pay significantly reduced.

96.    Meanwhile, CHEUNG was permitted to continue working at the cashier station, at his previous schedule (about thirty hours and fifteen minutes (30.25 hours) over the course of five (5) days per week) and at his previous salary.

97.    Furthermore, being transferred back to a cashier position, while CHEUNG remained at his cashier position, meant that AU was placed back in close proximity with CHEUNG.

98.    Beginning in about November 2022, AU had to have other workers accompany her throughout the store, including to the break room when she clocks out, in order to avoid being alone with CHEUNG.

99.    AU filed a charge of discrimination with the EEOC on or about October 18, 2023.

100.    In February 2024, GRAHAM performed her periodic review of cashiers, including AU.

101.    Despite having previously evaluated her as meeting expectations, GRAHAM now informed AU that she was falling behind on her metrics. In particular, AU now needed to ensure that for every one hundred (100) customers she rang up as a cashier, at least one (1) would sign up for a TJX Rewards card.

102.    The week beginning February 4, 2024, despite having worked five (5) hours, AU

received no net pay. Instead, all of her pay was withheld, ostensibly for payment of taxes.

103.    Defendants committed the foregoing acts knowingly, intentionally, willfully and maliciously.

## CLASS ACTION ALLEGATIONS

104.    Plaintiff brings her state law and local law sex discrimination claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former female employees employed by Corporate Defendants to work at Marshalls department store #1082, located on the fourth floor of The Shops at Skyview mall, at 40-24 College Point Boulevard, Flushing, NY 11354, during the period beginning either three (3) years preceding the filing of this Complaint or at the time of CHEUNG's hiring, whichever is later, and ending when judgment is entered this case (the "Class").

105.    The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

### *Numerosity*

106.    The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

107.    Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

### *Commonality*

108.    There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed the Class members within the meaning of New York law; (2) whether the Class members were subject

to sexual harassment by CHEUNG; (3) whether the Class members were subject to a sexually hostile work environment; and (4) whether Defendants failed to take actions to stop the sexual harassment and retaliation in response to complaints.

### Typicality

109.    Plaintiff's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

110.    All the Class members were subject to the same sexually hostile work environment and by the policies and practices of Corporate Defendants that nurtured it.

111.    Corporate Defendants' policies and practices affected all Class members similarly.

112.    Plaintiff and the other Class members sustained similar injuries and damages arising from the same unlawful policies and practices.

### Adequacy

113.    Plaintiff is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

114.    Plaintiff is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and employment discrimination actions.

### Superiority

115.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of employment discrimination litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

116.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

117.    Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

118.    Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

119.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

120.    The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

121.    Upon information and belief, Defendants and other employers throughout the state violate the NYSHRL, and employers throughout the city violate the NYCHRL.

122.    Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

123.    Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

124.    Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violation of Title VII—Discrimination on the Basis of Sex
### Brought by Plaintiff Against Corporate Defendants]

125.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

126.    Section 2000e-2(a)(1) of Title VII makes it an unlawful discriminatory practice for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's… sex…."

127.    The Secretary of Labor, interpreting Title VII, has determined that "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when… such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)(3).

128.    CHEUNG's unwelcome sexual advances toward AU and other female employees, and toward female customers, at AU's place of employment, constitutes sexual harassment and was and continues to be severe and pervasive enough to create an objectively hostile or abusive working environment.

129.    Corporate Defendants knew these actions constituted unlawful sex discrimination and showed reckless disregard to AU's rights.

130.    AU suffered and continues to suffer irreparable injury, monetary damages, emotional distress, and other compensable damages.

131.    Section 2000e-5(g)(1) of Title VII provides in relevant part that "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay…, or any other equitable relief as the court deems appropriate."

132.    Section 2000e-5(k) of Title VII further provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party… a reasonable attorney's fee (including expert fees) as part of the costs…."

## COUNT II.
### [Violation of NYSHRL—Discrimination on the Basis of Sex
### Brought by Plaintiff Against Defendants]

133.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

134.    Section 296(1) of the NYSHRL provides that "[i]t shall be an unlawful discriminatory practice: (a) [f]or an employer… because of an individual's… sex… to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

135.    Section 296(6) further provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

136.    CHEUNG's unwelcome sexual advances toward AU and other female employees, and toward female customers, at AU's place of employment, constitutes sexual harassment and was and continues to be severe and pervasive enough to create an objectively hostile or abusive

working environment.

137.    Corporate Defendants knew these actions constituted unlawful sex discrimination and showed reckless disregard to AU's rights.

138.    DIAZ aided in the discrimination of AU as described by the acts and practices complained of.

139.    Individual Defendants acted intentionally and willfully.

140.    AU suffered and continues to suffer irreparable injury, monetary damages, emotional distress, and other compensable damages.

141.    Section 297(9) of the NYSHRL provides in relevant part that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, including, in cases of employment discrimination related to private employers…, punitive damages, and such other remedies as may be appropriate, including any civil fines and penalties provided in subdivision four of this section…."

142.    Section 297(10) of the NYSHRL provides in relevant part that "[i]n an action or proceeding under this section… the court may in its discretion award reasonable attorney's fees to any prevailing or substantially prevailing party…."

### COUNT III.
### [Violation of NYCHRL—Discrimination on the Basis of Gender
### Brought by Plaintiff Against Defendants]

143.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

144.    Section 8-107(1) of the NYCHRL provides that "[i]t shall be an unlawful discriminatory practice: (a) for an employer or an employee or agent thereof, because of the actual or perceived… gender… of any person:… (3) [t]o discriminate against such person in

compensation or in terms, conditions or privileges of employment.

145.    CHEUNG's unwelcome sexual advances toward AU and other female employees, and toward female customers, at AU's place of employment, constitutes sexual harassment and was and continues to be severe and pervasive enough to create an objectively hostile or abusive working environment.

146.    Corporate Defendants knew these actions constituted unlawful sex discrimination and showed reckless disregard to AU's rights.

147.    DIAZ aided in the discrimination of AU as described by the acts and practices complained of.

148.    Individual Defendants acted intentionally and willfully.

149.    AU suffered and continues to suffer irreparable injury, monetary damages, emotional distress, and other compensable damages.

150.    Section 8-502(a) of the NYCHRL provides in relevant part that a "person claiming to be a person aggrieved by an unlawful discriminatory practice as defined in chapter 1 of this title… shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate…."

151.    Section 8-502(g) of the NYCHRL provides in relevant part that "[i]n any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees, and other costs."

### COUNT IV.
### [Violation of Title VII—Retaliation for Opposing Discrimination on the Basis of Sex Brought by Plaintiff Against Corporate Defendants]

152.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

153.    Section 2000e-3(a) of Title VII makes it an unlawful discriminatory practice for an

employer to "discriminate against any of his employees… because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

154.    Corporate Defendants made AU's work more physically taxing, worsened her schedule, shortened her hours, by shortening her hours while maintaining her hourly wage deprived her of pay, and by otherwise depriving her of pay, in retaliation first for complaining internally of CHEUNG's sexual harassment and second for charging the EEOC regarding same.

155.    Section 2000e-5(g)(1) of Title VII provides in relevant part that "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay…, or any other equitable relief as the court deems appropriate."

156.    Section 2000e-5(k) of Title VII further provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party… a reasonable attorney's fee (including expert fees) as part of the costs…."

### COUNT V.
**[Violation of NYSHRL—Retaliation for Opposing Discrimination on the Basis of Sex Brought by Plaintiff Against Corporate Defendants and DIAZ]**

157.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

158.    Section 296(1)(e) of the NYSHRL makes it an unlawful discriminatory practice for an employer to "to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a

complaint, testified or assisted in any proceeding under this article."

159.    Section 296(6) further provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

160.    Corporate Defendants and DIAZ made AU's work more physically taxing, worsened her schedule, shortened her hours, by shortening her hours while maintaining her hourly wage deprived her of pay, and by otherwise depriving her of pay, in retaliation first for complaining internally of CHEUNG's sexual harassment and second for charging the EEOC regarding same.

161.    DIAZ aided in the discrimination of AU as described by the acts and practices complained of.

162.    Section 297(9) of the NYSHRL provides in relevant part that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, including, in cases of employment discrimination related to private employers…, punitive damages, and such other remedies as may be appropriate, including any civil fines and penalties provided in subdivision four of this section…."

163.    Section 297(10) of the NYSHRL provides in relevant part that "[i]n an action or proceeding under this section… the court may in its discretion award reasonable attorney's fees to any prevailing or substantially prevailing party…."

### COUNT VI.
**[Violation of NYCHRL—Retaliation for Opposing Discrimination on the Basis of Gender Brought by Plaintiff Against Corporate Defendants and DIAZ]**

164.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

165.    Section 8-107(7) of the NYCHRL makes it an unlawful discriminatory practice "for

any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter [or] (ii) filed a complaint, testified or assisted in any proceeding under this chapter…. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment… or in a materially adverse change in the terms and conditions of employment…, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

166.    Corporate Defendants and DIAZ made AU's work more physically taxing, worsened her schedule, shortened her hours, by shortening her hours while maintaining her hourly wage deprived her of pay, and by otherwise depriving her of pay, in retaliation first for complaining internally of CHEUNG's sexual harassment and second for charging the EEOC regarding same.

167.    The above activity was objectively likely to deter a reasonable person from engaging in protected activity.

168.    Section 8-502(a) of the NYCHRL provides in relevant part that a "person claiming to be a person aggrieved by an unlawful discriminatory practice as defined in chapter 1 of this title… shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate…."

169.    Section 8-502(g) of the NYCHRL provides in relevant part that "[i]n any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees, and other costs."

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of herself, and on the behalf of the Class, respectfully requests that this Court enter a judgment providing the following relief:

a)      A declaratory judgment that the practices complained of herein are unlawful under federal and state antidiscrimination law;

b)      An injunction against the officers, agents, successors, employees, representatives and any and all persons acting in concert with them of Corporate Defendants as provided by law, from engaging in each of unlawful practices and policies set forth herein;

c)      An Order that Plaintiff be reinstated to her pre-discrimination position and schedule pursuant to 42 U.S.C. § 2000e-5(g), N.Y. Exec. L. § 297(9), and N.Y.C. Admin. C. § 8-502(a);

d)      back pay pursuant to 42 U.S.C. § 2000e-5(g), N.Y. Exec. L. § 297(9), and N.Y.C. Admin. C. § 8-502(a);

e)      compensatory damages for nonpecuniary losses including emotional pain pursuant to 42 U.S.C. § 2000e-5(g), N.Y. Exec. L. § 297(9), and N.Y.C. Admin. C. § 8-502(a);

f)      punitive damages pursuant to 42 U.S.C. § 2000e-5(g), N.Y. Exec. L. § 297(9), and N.Y.C. Admin. C. § 8-502(a);

g)      An award of up to $5,000.00 per plaintiff and per Class member as a penalty for failure to prevent a hostile work environment perpetrated by its employees;

h)      prejudgment and post-judgment interest;

i)      reasonable attorney fees pursuant to 42 U.S.C. § 2000e-5(k), N.Y. Exec. L. § 297(10), and N.Y.C. Admin. C. § 8-502(g); and

j)      Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rules 38(b) and (c) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions so triable.

Dated: Flushing, NY
      April 10, 2024

                            TROY LAW, PLLC

                            */s/ John Troy*
                            John Troy, Esq.
                            Aaron B. Schweitzer, Esq.
                            Tiffany Troy, Esq.
                            41-25 Kissena Boulevard
                            Suite 110
                            Flushing, NY 11355
                            (718) 762-1324
                            troylaw@troypllc.com
                            *Attorneys for the Plaintiff and proposed Class*